UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 16-cv-11865-GAO

FRANCISCO BAEZ,

    Plaintiff

v.

THE CITY OF BROCKTON;
GEORGE KHOURY;
EMANUEL GOMES; and
WAYNE SARGO,

    Defendants

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO F.R.C.P. 12(c)

### I.   STATEMENT OF THE CASE

Plaintiff filed his First Amended Complaint and Jury Demand for events surrounding the disciplining of the Plaintiff in his capacity as a Brockton Police Department officer via a written reprimand issued by his supervisor Defendant Sargo in September of 2013 and upheld by then Police Chief Defendant Gomes.

Specifically, Plaintiff brings this claim pursuant to M.G.L. c. 151B, § 4(1) and 42 U.S.C. § 1983, alleging discrimination on account of the Plaintiff's race.

### II.   STANDARD OF REVIEW

A motion for judgment on the pleadings challenges the legal sufficiency of the complaint, and accordingly, is subject to the same standards as a motion to dismiss. *Marrero-Gutierrez v. Molina*, 491 F.3d 1, 5 (1st Cir. 2007). The Court must consider all factual allegations of the complaint as true, but disregard legal conclusions, see *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000). The Court must determine whether the complaint sets forth

allegations "plausibly suggesting (not merely consistent with) an entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

### III.  STATEMENT OF THE FACTS

The Plaintiff is a black Hispanic male whose parents were born in the Dominican Republic (First Amended Complaint ¶ 6). Plaintiff began working for the Brockton Police Department in 1996 (*Id*. at par. 7).

On September 15, 2013, Plaintiff was in the booking area as were a number of other officers including Defendant Sgt. Khoury. Plaintiff walked by Sgt. Khoury but never pushed him, nudged him or touched him in any way. (*Id*. at par. 10).

On September 15, 2013, Khoury wrote a complaint to Chief Gomes alleging that the Plaintiff had bumped into him on September 13, 2013 and was discourteous to him, referring to the alleged conduct of the Plaintiff on September 13, 2013 as an assault on Khoury (*Id*. at par. 11). Plaintiff was asked by Defendant Captain Sargo to write a report concerning his interaction with Sgt. Khoury which Plaintiff did, explaining that, in fact, there was no interaction with Khoury on September 15, 2013 (*Id*. at par. 15 and 16).

Despite this non-interaction with Khoury, the Plaintiff received a December 10, 2013 written reprimand from Captain Sargo (*Id*. at par. 17). Plaintiff appealed this written reprimand from Captain Sargo to defendant Gomes on the same day (*Id*. at par. 24). Gomes upheld the written reprimand (*Id*. at par. 27).

The Plaintiff filed a grievance of Gomes' decision upholding the written reprimand, and a hearing was held with City of Brockton Director of Personnel Maureen Cruise (*Id*. at par. 33-34). Despite clear evidence that Khoury had fabricated his allegation, based on the viewing of a tape of the alleged incident, Cruise upheld the written reprimand (*Id*. at par. 36).

Plaintiff's union then appealed Director Cruise's upholding of the written reprimand pursuant to the Collective Bargaining Agreement between the Plaintiff's police union and the City of Brockton to an independent arbitrator (*Id*. at par. 37).

On September 3, 2014, prior to any hearing before the independent arbitrator, the City of Brockton and the police union settled the grievance, entering into an agreement with the City of Brockton to remove the Plaintiff's reprimand immediately from the Plaintiff's personnel record, and to rescind any and all discipline associated with the incident (*Id*. at par. 38).

On September 24, 2014, the Plaintiff filed a complaint with Lt. William Hallisey of the Brockton Police Department, requesting that an investigation be conducted concerning the alleged lies and fabrications of Sgt. Khoury (*Id*. at par. 39). Plaintiff also asked in the same complaint that Sargo and Gomes be investigated (*Id*.). Neither Khoury, Sargo or Gomes were disciplined as a result of the alleged fabricated charges by Khoury.

## IV.     ARGUMENT

**Plaintiff Has Failed to Articulate a Race Discrimination Claim Under c. 151B Section 4(1) or Pursuant to 42 USC Section 1983**

A *prima facie* case for discrimination based on disparate treatment presents a four-part test: (1) the plaintiff must be a member of a protected class; (2) he must be qualified for his job; (3) he must suffer an adverse employment action at the hands of his employer; and (4) there must be some evidence of a causal connection between his membership in a protected class and the adverse employment action, e.g., in the case of a firing, that the position was filled by someone with similar qualifications. *St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)*; *Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000)*.

Adverse actions consist of a defendant's action to not only discharge or expel, but also to "'otherwise discriminate against' the plaintiff." *Sensing v. Outback Steakhouse of Florida, LLC, 575 F.3d 145, 160 (1st Cir. 2009).* Thus, a plaintiff can satisfy the second element of his prima facie case by raising a genuine issue as to whether defendants "'took . . . adverse employment action against [him],'" other than termination. *Id.* Such other adverse employment actions may include "'disadvantag[ing] [plaintiff] in respect to salary, grade, or other objective terms and conditions of employment.'" *Id.*; accord *Blackie v. State of Me., 75 F.3d 716, 725 (1st Cir. 1996)* (including demotion, reduction in salary and divestment of significant responsibilities as examples of adverse employment actions); *O'Brien v. Mass. Inst. of Tech., 82 Mass. App. Ct. 905, 976 N.E.2d 154, 159 (Mass.App.Ct. 2012)* (holding that a reasonable juror could conclude that the plaintiff's termination as well as verbal and written warnings he received which constituted in part the reasons for his termination were all material "adverse actions" under chapter 151B). As such, "[d]etermining whether an action is materially adverse necessarily requires a case-by-case inquiry." *Blackie, 75 F.3d at 725*.

The First Circuit has explained that "[t]o be adverse, an action *must materially change the conditions of plaintiff's employ*." *Gu v. Boston Police Department*, 312 F.3d 6, 14 (1st Cir. 2002)(emphasis added). Typically, such actions "involve[] discrete changes...,such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Cham v. Station Operators, Inc.*, 685 F.3d 87, 94 (1st Cir. 2012)(quoting *Morales-Vallellanes v. Potter*, 605 F.3d 27, 35 (1st Cir. 2010). Whether an employment action is "adverse," and therefore actionable, is gauged by an objective standard. See *Blackie v. Maine*, 75 F.3d 716, 725-726 (1st Cir. 1996).

4

Ordinarily, reprimands by management or supervisors do not constitute materially adverse employments actions if they do not carry with them "any tangible consequences." *Bhatti v. Trustees of Boston University*, 659 F.3d at 73. Workplaces are "rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." *Morales-Vallellanes v. Potter*, 605 F.3d at 35. "[F]ormal criticisms or reprimands that do not lead to a change in compensation, responsibilities, or other benefits do not constitute an adverse employment action… *Powell v. Yellow Book USA, Inc.*, 445 F.3d 1074, 1079 (8th Cir. 2006); *Barnett v. Athens Regional Medical Center, Inc.*, 550 Fed.Appx. 711, 713 (11th Cir. 2013)(although written reprimands were steps in the employer's progressive disciplinary policy which could have led to harsher disciplinary actions, they were not actionable because the record did not show that they had any tangible effects on plaintiff's employment); *Rennard v. Woodworker's Supply, Inc.*, 101 Fed.Appx. 296, 307-308 (10th Cir. 2004)(reprimands received by employee pursuant to employer's progressive disciplinary process not considered adverse actions notwithstanding that each reprimand brought employee closer to termination, absent evidence of sufficiently tangible job consequences linked to the reprimands); *Rivot-Sanchez v. Warner Chilcott Co.*, 707 F. Supp. 2d 234 (District of Puerto Rico 2010).

Case law in the First Circuit acknowledges that reprimands without any tangible consequences do not rise to the level of an adverse employment action. *See Bhatti v. Trustees of Boston University*, 659 F.3d 64, 73 (1st Cir. 2011)(holding that written reprimands that do not carry with them any tangible consequences were not materially adverse and thus not actionable); *Serrano v. Donahoe*, Civil No. 12-1055 (PAD)(D.P.R. Sept. 30, 2014), 2014 WL 4924434, 2014 U.S. Dist. LEXIS 141566, at *8 (same)(citation omitted).

Specifically, the written reprimand in the instant case cannot be said to be material because it did not carry with it any tangible consequences. *Bhatti v. Trustees of Boston University,* 659 F.3d 64, 72 (1st. Cir 2011). Plaintiff did not lose any benefits, salary, nor was there a material change in Plaintiff's working conditions. Moreover, the City of Brockton "agreed to remove the Plaintiff's written reprimand from the Plaintiff's personnel records and to rescind the discipline issued to the Plaintiff." (*Id*. at para. 38). Therefore, there are no tangible consequences to the Plaintiff since the grievance contesting the issuance of the written reprimand was settled prior to an arbitration. Plaintiff has thus suffered no economic harm, and there is no tangible consequence because of the now-removed reprimand—and therefore no adverse action.

## V.     **CONCLUSION**

For the above stated reasons, the Defendants move this Honorable Court to allow their Motion for Judgment on the Pleadings pursuant to F.R.C.P. 12(c).

Defendants,

By their Attorney,

/s/*Stephen C. Pfaff*

_____
Stephen C. Pfaff   BBO# 553057
Louison, Costello, Condon & Pfaff, LLP
101 Summer Street
Boston, MA 02110
(617) 439-0305
spfaff@lccplaw.com

## CERTIFICATE OF SERVICE

    I, Stephen C. Pfaff, hereby certify that on the 27th day of June, 2017, I served the foregoing by causing a copy to be directed electronically or via e-mail/first class mail, postage prepaid to:

Kevin Powers, Esq.
Rodgers, Powers & Schwartz LLP
111 Devonshire Street
Boston, MA 02109

                                /s/*Stephen C. Pfaff*

                                Stephen C. Pfaff