UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 16-cv-11865-GAO

FRANCISCO BAEZ,

       Plaintiff

v.

THE CITY OF BROCKTON POLICE
DEPARTMENT; GEORGE KHOURY;
EMANUEL GOMES; and
WAYNE SARGO,

       Defendants

### THE PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

The defendants have moved for a judgment on the pleadings, the plaintiff hereby opposes the defendants' motion.

### I. STANDARD OF REVIEW

The plaintiff agrees with the defendants' statement of the standard for review. The standard of review of a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) [**6] is the same as that for a motion to dismiss under Rule 12(b)(6). Pasdon v. City of Peabody, 417 F.3d 225, 226 (1st Cir. 2005); Collier v. City of Chicopee, 158 F.3d 601, 602 (1st Cir. 1998). The Court's decision when considering a motion to dismiss must take as true the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff. Vistamar, Inc. v. Fagundo-Fagundo, 430 F.3d 66, 69 (1st Cir. 2005). As argued below, while the defendants state the general standard for considering a motion

for judgment on the pleadings, the defendants' analysis and the cases cited to support their analysis are predominantly summary judgment cases, and therefore not applicable to the courts consideration of this motion.

## II.   STATEMENT OF FACTS

The Plaintiff is a Black Hispanic male whose parents were born in the Dominican Republic. The Plaintiff began working as a police officer for the Department in 1996. During the Plaintiff's employment with the Department, he was the only employee of the Department of Dominican Republic ancestry. During the time that the Plaintiff worked with Sergeant Khoury, Sergeant Khoury referred to black people as "niggers" and to Hispanic people as "spics". Sergeant Khoury also referred to white women who dated black men as "white trash nigger lovers".

On September 13, 2013, the Plaintiff was in the booking area along with a number of other officers, including Sergeant Khoury. The Plaintiff walked by Sergeant Khoury but never, pushed him, nudged him, or touched him in any way.

On September 15, 2013 Sergeant Khoury wrote a report to Chief Gomes about the Plaintiff. In that report, despite the fact that the Plaintiff did not touch Sergeant Khoury, Sergeant Khoury reported to Chief Gomes that, on September 13, 2013, sometime after 1600 hours, in the booking room, the Plaintiff bumped into him and was discourteous to him. Sergeant **<u>Khoury referred to the conduct of the Plaintiff as an assault on him by the Plaintiff.</u>** In Sergeant Khoury's September 15, 2013 report to Chief Gomes, Sergeant Khoury also alleged that on the same day, September 13, 2013, that the Plaintiff passed him in the hallway leading to the cell area and bumped him as he passed. This allegation was also a complete fabrication. Sergeant

Khoury's false allegation was made because he had animus towards the Plaintiff on account of the Plaintiff's race, national origin, and/or ethnicity.

Neither Chief Gomes nor Captain Sargo informed the Plaintiff of the allegations against him. Captain Sargo sent the Plaintiff a memo dated September 17, 2013. In the memo, Captain Sargo asked the Plaintiff to state, in writing, what duties he was performing on September 13, 2013 regarding the "Neighborhood Surge" and to describe in detail any interaction with Sergeant Khoury. The Plaintiff responded to Captain Sargo that on September 13, 2013 he had no interaction with Sergeant Khoury. On December 10, 2013, as a result of the false allegation made by Sergeant Khoury, the Plaintiff received a written disciplinary action issued by Captain Sargo. In the letter of reprimand Captain Sargo stated: "Sergeant Khoury related that you did willfully bump him twice in the booking area and while he was involved with a 'Neighborhood Surge' operation." **Captain Sargo reprimanded the Plaintiff for conduct unbecoming of an officer and for insubordination.**

At the time Captain Sargo issued the written reprimand to the Plaintiff, Captain Sargo was aware that the booking area, where the alleged incident took place, was monitored by a camera that video recorded the area. Captain Sargo viewed the tape of the booking area for the time that Sergeant Khoury claimed he was assaulted by the Plaintiff before he issued a letter of reprimand.

Captain Sargo issued a written reprimand to the Plaintiff despite the fact that Captain Sargo had access to and viewed a video of the booking area showing that at the time Sergeant Khoury claimed that he was bumped by the Plaintiff, he was not touched by the Plaintiff or by anyone else. At the time Captain Sargo issued the letter of reprimand to the Plaintiff, Captain Sargo was

aware that the tape recording of the booking area showed that the Plaintiff did not bump Sergeant Khoury and that Sergeant Khoury's report was either wrong or a complete fabrication.

Captain Sargo never informed the Plaintiff of the allegations against him before he issued the Plaintiff a disciplinary letter of reprimand and thus, never gave the Plaintiff an opportunity to respond to the allegations made by Sergeant Khoury before issuing a disciplinary reprimand to the Plaintiff. The decision by Captain Sargo to discipline the Plaintiff in spite of the fact that he had in his possession a video clearly demonstrating that Sergeant Khoury was engaged in a total fabrication was an account of discrimination, racial, national origin, and ethnic animus on the part of Captain Sargo against the Plaintiff and/or because he was condoning and acting on the prejudice and/or discriminatory animus of Sergeant Khoury.

On or about December 10, 2013, the Plaintiff appealed his written disciplinary reprimand to Chief Gomes. Chief Gomes knew that the area where the alleged assault of Sergeant Khoury occurred was an area in the booking room monitored by a camera that recorded the activity in the area. Before he issued a denial of the Plaintiff's appeal of his written disciplinary reprimand, Chief Gomes had access to the video recording of the booking room at the date and time of the alleged assault of Sergeant Khoury by the Plaintiff. Chief Gomes upheld the written reprimand of the Plaintiff despite the fact that he had in his possession and viewed a video clearly demonstrating that Sergeant Khoury had engaged in a total fabrication when he alleged that the Plaintiff had assaulted him. It is alleged in the complaint that the decision of then Chief Gomes to uphold the written reprimand of the Plaintiff was on account of racial, national origin, and ethnic bias and animus on the part of Chief Gomes and because he was conditioning and acting on the prejudice and discriminatory animus of Sergeant Khoury

In an attempt to defend the Plaintiff, his union asked the Department to produce the video of the booking area on the date in question. The union was told by the Department that no such tape existed. This was a lie; in fact, a copy of the video of the booking room, on the day in question, had been made and preserved by the Department. On or about January 13, 2014, the Plaintiff made a written request for his personnel records. In February 2014, the Plaintiff received his personnel records and in the records was a video of the booking area for the date of September 13, 2013. The video of the booking area for the date of September 13, 2013 showed that the Plaintiff had no body contact with Sergeant Khoury and that Sergeant Khoury's allegations that the Plaintiff had assaulted him were a total fabrication. The Plaintiff filed a grievance of the decision of Chief Gomes upholding his written reprimand. A hearing was held before the City of Brockton Director of Personnel Maureen Cruise ("Director Cruise"). At the hearing before Director Cruise, the recording of the booking area for September 13, 2013 was available and was shown.  The recording showed that the Plaintiff never bumped Sergeant Khoury and was evidence that Sergeant Khoury had fabricated his story which led to the Plaintiff being issued a written disciplinary reprimand. Despite the clear evidence that Sergeant Khoury had fabricated his allegation that he had been assaulted by the Plaintiff, Director Cruise upheld the written reprimand of the Plaintiff.

The Plaintiff's union appealed then Director Cruise's decision upholding the written reprimand of the Plaintiff to an independent arbitrator, as was the union's right under the existing collective bargaining agreement. On or about September 3, 2014, after the Plaintiff's union appealed the written reprimand to an independent arbitrator, the City of Brockton entered into an agreement whereby the City of Brockton agreed to remove the Plaintiff's written reprimand from the Plaintiff's personnel records and to rescind the discipline issued to the Plaintiff.

On September 24, 2014, the Plaintiff filed a complaint with Lieutenant William Hallisey, who was, at the time, in charge of the Internal Affairs Division of the Department. In the complaint, the Plaintiff asked that a formal investigation be conducted concerning the lies and fabrications of Sergeant Khoury that he had been assaulted by the Plaintiff, in the booking area, on the day of September 13, 2013. In the same complaint, the Plaintiff requested that Captain Sargo and now former Chief Gomes also be investigated. The plaintiff was never informed that either Sergeant Khoury, Captain Sargo, or former Chief Gomes were ever disciplined as a result of the fabricated charges made against the Plaintiff, and the plaintiff does not believe they were disciplined.

The Plaintiff was emotionally pained because he was concerned that a reprimand in his file for allegedly assaulting a superior officer would mean that the Plaintiff would never be promoted. The fabricated charges made by Sergeant Khoury, the failure to investigate those charges, and the upholding of those charges cause the Plaintiff severe mental pain and suffering due to the fact that the Plaintiff was extremely fearful that he was being set up for termination by and from the Department. The Plaintiff was extremely upset and concerned that if he was terminated from the Department that he would never work as a police officer again and that he would not be able to support his family.

### III. ARGUMENT

The defendants concede that the plaintiff has sufficiently pled the first two prongs of a prima facia case of discrimination: 1) that the plaintiff was a member of a protected class and 2) that he was qualified for the job he held. The defendants argue that the plaintiff's case must be dismissed because, as a matter of law, he has not sufficiently pled the third prong of his

prima facia case, in that he suffered an adverse employment action. The defendants argue that the fact that the plaintiff was accused of perpetrating an assault on a superior officer, and received a written reprimand for insubordination and for conduct unbecoming of an officer was not an adverse job action.

When determining the sufficiency of a complaint for the purpose of a motion to dismiss, or in this case, a motion for a judgment on the pleadings, the court must accept all well-plead factual averments as true, and draw all reasonable inferences in the Plaintiff's favor, even if doubtful in fact. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). Rather than analyzing and citing cases decided under 12 b (6), the defendant has incorrectly cited and relied on summary judgment cases and a summary judgment based argument. The defendants' motion should not be considered through a summary judgment analysis prism.

The defendants rely on the case of Bhatti v Trustees of Boston University, 659 F.3d 64 (1st Cir. 2011) for the principal that a written reprimand cannot be an adverse job action. The defendants fail to acknowledge that the Court in, Bhatti, stated that a written reprimand may constitute an adverse job action. Id. at 73. In the case of Billings v. Town of Grafton, 515 F.3d 39, 44 (1st Cir. 2008), the Court stated that reprimanding the plaintiff was an adverse job action that gave rise to a claim of retaliation.

The test is an objective test and "should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'" Lockridge v. Univ. of Me. Sys., 597 F.3d 464, 472 (1st Cir. 2010). The plaintiff alleges, in his complaint, (Par. 41 and 42) that he was emotionally pained and concerned that the reprimand placed in his file for allegedly assaulting a superior officer would mean he would never be promoted and was extremely fearful that he was being set up for termination.

The defendants cite the case of Powell v. Yellow Book USA, Inc., 445 F.3d 1074 (8th Cir. 2006), a decision that has been criticized by other courts such as, Kirby v. Donahoe, 2015 U.S. Dist. LEXIS 89559 (2015) U.S. District Court for the District of Minnesota. In Kirby, the court found that a reprimand may constitute an adverse job action if it may hinder career advancement. Id. at 35.  In the present case, the plaintiff alleges that he was concerned that his career would be over. When a police officer is accused and then formally reprimanded for assaulting his superior officer it is a black mark on the officer's career that can never be erased. In a para-military organization such as a police department, a reprimand for assaulting a superior officer will inevitably cause the plaintiff to be unable to be promoted.  The fact that the written reprimand was removed after appealing the written reprimand through three levels of the Union grievance procedure does not negate the fact that the plaintiff suffered the psychological consequences of the reprimand during the time his grievance was being heard; all while under anxiety that he was being set up and that his career would be over.

The analysis of what constitutes an adverse job action under M.G.L.A. 151B is similar to the analysis of the Federal Courts but not identical because the Massachusetts courts have consistently held that 151B is a remedial statute and therefore must be liberally construed. Green v. Wyman-Gordon Co., 422 Mass. 551, 554 (1996).

Under Massachusetts law, lower evaluation scores may be an adverse action. Ritchie v. Dep't of State Police, 60 Mass. App. Ct. 655 (2004). A threat to terminate may be an adverse action. Bain v. City of Springfield, 424 Mass. 758, 765 (1997).

Retaliation is "materially adverse" if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern and Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2412 (2006) (Title VII); Ngassa v. Ocean State Job Lot Stores of SE, 2010 Mass. Super. Lexis

32, at 7 (c. 151B); Farricy v. Suffolk County Sheriff's Dept., 2000 Mass. Comm. Discrim. Lexis 47, at 11 (action with "chilling effect" is adverse).  Transfers may also be adverse actions. In College-Town v. MCAD, 400 Mass. 156 (1987), cases have extended coverage of c. 151B "to slights or indignities that might seem evanescent."  King v. Boston, 71 Mass. App. 460, 470 (2008). For example, the circumstances of a lay off, in which there is a lack of notice and where employees are escorted out of the building, are by themselves an adverse action. Coney v. Trustees of Health & Hospitals of the City of Boston, Inc., 2000 Mass. Comm. Discrim. Lexis 92, at 21, affirmed, 65 Mass. App. 329, 334 & n.5 (2005), affirmed 449 Mass. 675 (2007). Thomas v. Suffolk County Sheriff's Dept., 1998 Mass. Comm. Discrim. Lexis 95, 14, 21-22 (1998) (lateral transfer found to be adverse, even in the absence of loss or pay rank, or disadvantageous shift change, where there was unusually short notice, and disparaging comments uttered at the time of transfer), reversed with respect to dismissal of co-complainant's case, sub nom., Farricy v. Suffolk County Sheriff's Dept., 2000 Mass. Comm. Discrim. Lexis 47 (even threat of transfer is an adverse action).

IV. CONCLUSION

For all the reasons stated above the plaintiff moves this court to deny the defendants' motion for judgment on the pleadings.

The Plaintiff

By his Attorney,

/s/ Kevin G. Powers

_____

Kevin G. Powers, BBO# 405020
Powers, Jodoin, Margolis & Mantell LLP
111 Devonshire Street, Suite 400
Boston, MA 02109
(617) 742-7010

CERTIFICATE OF SERVICE

I, Kevin G. Powers, hereby certify that on this 12th day of July 2016, a true copy of the foregoing was served by mail, upon Stephen C. Pfaff, Esq., Louison, Costello, Condon & Pfaff, LLP., 101 Summer Street, Boston, MA 02110.

*/s/ Kevin G. Powers*

_____

Kevin G. Powers