UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| FRANCISCO BAEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-11865-GAO |
| | ) | |
| THE CITY OF BROCKTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION ON DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS
[Docket No. 37]

November 1, 2017

Boal, M.J.

In this action, plaintiff Francisco Baez alleges that the Defendants discriminated against him on account of his race, national origin, and ethnicity in violation of 42 U.S.C. § 1983 and M.G.L. c. 151B. Defendants have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Docket No. 37.[1] For the following reasons, the Court recommends that the District Judge assigned to this case deny the motion.

I. FACTS[2]

Baez is a Black, Hispanic male whose parents were born in the Dominican Republic. First Amended Complaint ("AC") ¶¶ 1, 6. At all relevant times, he was employed as a police

---

[1] On July 26, 2017, the District Court referred this case to the undersigned for full pretrial management, including report and recommendation on dispositive motions. Docket No. 41.

[2] Because this case is before the Court on a motion for judgment on the pleadings, the Court takes as true all well-pleaded allegations in the complaint and draws all reasonable inferences in Baez's favor. See Curran v. Cousins, 509 F.3d 36, 43 (1st Cir. 2007).

1

officer for the City of Brockton Police Department.  Id. at ¶ 1.  During his employment with the Brockton Police Department, Baez was the only employee of Dominican Republic ancestry.  Id. at ¶ 8.

Baez alleges that during the time that Baez worked with defendant Sergeant George Khoury, Khoury referred to black people as "niggers" and to Hispanic people as "spics."  Id. at ¶ 9.  Khoury also referred to white women who dated black men as "white trash nigger lovers."  Id.

On September 13, 2013, Baez claims that he was in the booking area as were a number of other officers, including Khoury.  Id. at ¶ 10.  Baez walked by Khoury but never pushed him, nudged him, or touched him in any way.  Id.

On September 15, 2013, Baez claims that Khoury falsely reported to defendant Chief of Police Emanuel Gomes that, on September 13, 2013, Baez bumped into Khoury and was discourteous to him while in the booking room.  Id. at ¶ 11.  Khoury also falsely reported that on the same day, Baez passed him in the hallway leading to the cell area and bumped him as he passed.  Id. at ¶ 12.  Khoury referred to Baez's conduct as an assault.  Id. at ¶ 11.  Baez alleges that Khoury's false accusations were made because he had animus towards Baez on account of Baez's race, national origin, and/or ethnicity.  Id. at ¶ 13.

On December 13, 2013, as a result of Khoury's false allegation, Baez received a written disciplinary action issued by defendant Captain Wayne Sargo.  Id. at ¶ 17.  In the letter of reprimand, Sargo wrote that "Sergeant Khoury related that you did willfully bump him twice in the booking area and while he was involved with a 'Neighborhood Surge' operation."  Id.  Captain Sargo reprimanded Baez for conduct unbecoming of an officer and for insubordination.  Id.

Baez alleges that a video of the alleged incident shows that Khoury's allegations were false. Id. at ¶¶ 18, 20, 32. Sargo viewed the video and was aware that Khoury's allegations were false before issuing the letter of reprimand. Id. at ¶¶ 19-21, 23. Sargo's decision to discipline Baez despite his knowledge that Khoury's allegations were false was based on racial, ethnic, and national origin animus against Baez and/or because Sargo condoned the prejudice and discriminatory animus of Khoury. Id. at ¶ 23.

On or about December 10, 2013, Baez appealed his written disciplinary reprimand to Gomes. Id. at ¶ 24. Gomes was also aware that video existed showing that Khoury's allegations were false. Id. at ¶¶ 25-27. Nevertheless, Gomes upheld the written reprimand. Id. at ¶ 27. Baez alleges that Gomes' decision to uphold the written reprimand "was on account of racial, national origin, and ethnic bias and animus on the part of Chief Gomes and because he was conditioning and acting on the prejudice and discriminatory animus of Sergeant Khoury." Id. at ¶ 28.

In an attempt to defend Baez, his union requested the video of the booking area on the date in question. Id. at ¶ 29. The union was told by the Department that no such video existed. Id. In fact, a video did exist. Id. In February 2014, Baez received his personnel record, which contained a copy of the video of the booking area for September 13, 2013. Id. at ¶ 31.

Baez filed a grievance of Gomes' decision upholding the written reprimand. Id. at ¶ 33. A hearing was held before the City of Brockton Director of Personnel Maureen Cruise. Id. at ¶ 34. The video of the booking area was shown at the hearing. Id. at ¶ 35. Despite the clear video evidence that Khoury's allegations were false, Cruise upheld the written reprimand. Id. at ¶ 36.

After the Union appealed the written reprimand to an independent arbitrator, the City of Brockton entered into an agreement whereby it agreed to remove the written reprimand from Baez's personnel record and to rescind the discipline issued to Baez. Id. at ¶ 38.

On September 24, 2014, Baez filed a complaint with Internal Affairs regarding Khoury, Sargo, and Gomes' conduct in connection with Khoury's accusations against Baez and Sargo and Gomes' handling of it. Id. at ¶ 39. Neither Khoury, Sargo, nor Gomes were ever disciplined as a result of the fabricated charges against Baez. Id. at ¶ 40.

Baez alleges that he suffered severe mental and emotional pain as a result of the fabricated charges, the failure to investigate those charges, and the upholding of the charges against him. Id. at ¶¶ 41, 42. Baez was afraid that he was being set up for termination and that he would never be able to work as a police officer again. Id. at ¶¶ 42, 43.

Baez filed his complaint on September 13, 2016. Docket No. 1. On February 2, 2017, he filed an amended complaint. Docket No. 23. The Defendants filed an answer on February 10, 2017. Docket No. 26.

On June 27, 2017, the Defendants filed the instant motion for judgment on the pleadings. Docket No. 37. Baez filed an opposition on July 12, 2017. Docket No. 40. The Court heard oral argument on November 1, 2017.

II.   ANALYSIS

   A.   Standard Of Review

"After the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Court reviews motions for judgment on the pleadings under substantially the same standard as that for a motion to dismiss for failure to state a claim under Rule 12(b)(6), except that "[a] Rule 12(c) motion, unlike a Rule 12(b)(6)

4

motion, implicates the pleadings as a whole." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54-55 (1st Cir. 2006). Facts contained in the pleadings are viewed in the light most favorable to the nonmovant, and all reasonable inferences are drawn in his or her favor. Zipperer v. Raytheon Co., 493 F.3d 50, 53 (1st Cir. 2007). The Court "may consider 'documents the authenticity of which are not disputed by the parties; . . . documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint.'" Curran, 509 F.3d at 44 (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). Judgment on the pleadings is appropriate "only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." Zipperer, 493 F.3d at 53 (quoting Aponte-Torres, 445 F.3d at 54).

    B.    The Defendants Are Not Entitled To Judgment On The Pleadings

Plaintiffs brings claims for racial, ethnic and national origin discrimination under 42 U.S.C. § 1983 and M.G.L. c. 151B. The parties appear to agree[3] that a similar legal framework applies to both claims: in order to prevail on his claims, Baez must show that (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment action at the hands of his employer; and (4) there is some evidence of a causal connection between his membership in a protected class and the adverse employment action. See Bhatti v. Trustees of Boston Univ., 659 F.3d 64, 70 (1st Cir. 2011) (noting that the same legal framework applies to both Title VII and Section 1981 claims for which Section 1983 constitutes the exclusive federal remedy); see also Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 541 (1995) (Massachusetts follows the McDonnell Douglass burden shifting framework in employment discrimination cases pursuant to Chapter 151B); Geras v. Hempstead Union Free

---

[3] See Docket No. 38 at 3; Docket No. 40 at 6-8.

School Dist., 149 F. Supp. 3d 300, 338-339 (E.D.N.Y. 2015) (the familiar McDonnell Douglass burden shifting framework applies to Section 1983 claims based on employment discrimination).

Defendants argue that Baez's claims must fail because he has failed to plead an adverse employment action. Docket No. 38 at 3-6. The Court disagrees.

"To be adverse, an action must materially change the conditions of plaintiff['s] employ." Gu v. Boston Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002) (citation omitted). "The alleged retaliatory action must be material, producing a significant, not trivial, harm." Rivot-Sanchez v. Warner Chilcott Co., Inc., 707 F. Supp. 2d 234, 271 (D.P.R. 2010) (citing Carmona-Rivera v. P.R., 464 F.3d 14, 19 (1st Cir. 2006)). Adverse employment actions generally include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." Id. (quoting Marrero v. Goya of P.R., Inc., 304 F.3d 7, 23 (1st Cir. 2002)). "Determining whether an action is materially adverse necessarily requires a case-by-case inquiry. Moreover, the inquiry must be cast in objective terms." Id. (quoting Blackie v. State of Me., 75 F.3d 716, 725 (1st Cir. 1996)). "Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." Id.

A reprimand may constitute an adverse action. Bhatti, 659 F.3d at 73. To be actionable, however, such a reprimand must carry tangible consequences, such as termination, suspension, a change in compensation, payment of bonuses, and other benefits. Fernandez-Ocasio v. WalMart Puerto Rico, Inc., 94 F. Supp. 3d 160, 173 (D.P.R. 2015) (citing Bhatti, 659 F.3d at 73).

Baez has alleged that he received a written reprimand for conduct unbecoming of an officer and for insubordination. AC ¶ 17. While he has not specifically pled the consequences

6

of such a written reprimand, he has alleged that he feared that the reprimand was a set up to terminate him from his position as a police officer. Id. at ¶ 42. He also alleged that he was concerned that a reprimand in his file meant that he would never be promoted. Id. at ¶ 41. The Court finds that, at this stage, those allegations are sufficient to defeat the Defendants' motion for judgment on the pleadings.[4]

The Defendants argue that the written reprimand in this case did not carry any tangible consequences because, as Baez acknowledges in his complaint, the City of Brockton agreed to remove it from Baez's personnel record and to rescind the discipline issued to Baez. Docket No. 38 at 6. However, the Defendants' position would allow employers who have subjected an employee to adverse employment action with discriminatory intent to avoid sanctions by nullifying the adverse employment action at a later date. See, e.g., Abraham v. Potter, 494 F. Supp. 2d 141, 149 (D. Conn. 2007). In this case, Baez alleges that he received the written reprimand in December 2013. AC ¶ 17. It was not until approximately nine months later, in September 2014, after his union litigated the issue on his behalf, that the City of Brockton agreed to remove the written reprimand from Baez's personnel record. AC ¶ 38. In the meantime, Baez feared that he could be terminated due to the written reprimand. AC ¶ 42.

Accordingly, the Court declines to recommend that the District Court grant judgment on the pleadings in favor of the Defendants.

III. RECOMMENDATION

For the foregoing reasons, this Court recommends that the District Judge assigned to this case deny the Defendants' motion for judgment on the pleadings.

---

[4] The Court notes that many of the cases cited by the Defendants, including Bhatti, were decided on summary judgment after the benefit of discovery.

## IV. REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge